# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| YAODI HU, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   vs. | )   Case No. 08 C 4108 |
| | ) |
| CITY OF CHICAGO and | ) |
| MAYFLOWER FOOD, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Yaodi Hu has filed a *pro se* lawsuit against the City of Chicago and Mayflower Food. The case is before the Court on the City's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants the motion in part and denies it in part.

## Background

On August 3, 2008, Mr. Hu, who identifies himself as an Asian-American male, filed an eleven-count amended complaint against the City and Mayflower. The amended complaint was the first occasion on which he named Mayflower as a defendant. The complaint involves two distinct series of events. The first part deals with the City's revocation of a building permit on property owned by Mr. Hu. The second part concerns Mr. Hu's arrest by Chicago police at Mayflower's grocery store. Because the Court is considering a motion to dismiss, it takes as true the facts alleged in the amended complaint.

1.  **Permit Revocation**

In May 2006, Mr. Hu obtained a permit from the City to repair his roof and siding. In July and August of 2006, the City issued stop work orders for Mr. Hu's property on the ground that he was converting the second floor attic into living quarters. Mr. Hu alleges that as a result, he was unable to complete the work and could not rent out the second floor.

Mr. Hu asserts seven claims against the City concerning these events. Counts 1, 3, and 4 are all section 1983 claims. In count 1, Mr. Hu alleges the City violated procedural due process by revoking his permit without a hearing. In count 3, Mr. Hu alleges the City has violated the Equal Protection Clause of the Fourteenth Amendment because it singled him out based on his national origin. In count 4, he alleges the City violated substantive due process by revoking his permit and violating his claimed right to continue repairs on his property. In count 2, Mr. Hu alleges the City violated 42 U.S.C. § 1981 because it has a custom and pattern of practice of targeting "minority communities" in issuing stop work orders. In counts 5 and 6, Mr. Hu alleges the City's stop work orders deprived him of all economically valuable use of his property, amounting to a regulatory taking without just compensation in violation of the Fifth Amendment and the parallel provision of the Illinois Constitution. Finally, in count 7, Mr. Hu claims the City violated 42 U.S.C. § 1982 by issuing a discriminatory stop work order, preventing him from leasing his property.

2.  **Mayflower Arrest**

In or about August 2004, Mr. Hu alleges, he went to the Mayflower store, where

he had been a regular customer. He selected merchandise, including some fresh fish, and tendered his credit card to purchase the merchandise. The sales clerk asked Mr. Hu for identification, which, he says, had never occurred on his prior visits to the store. Because he did not have his identification, the store would not accept his credit card. Mr. Hu says that he attempted to "abandon" his purchase of the merchandise and leave the store, but because the fish had been cut, the store insisted that he remain there and have his wife come with cash to complete the purchase. As closing time approached, Mr. Hu says, the store called the Chicago police, locked the door, and prevented him from leaving until the police arrived. A police sergeant "insisted" that Mr. Hu pay cash, but he did not have cash, and the store continued to refuse to accept his credit card. Store personnel made a complaint of attempted theft, and the Chicago police arrested Mr. Hu. He was released from custody later that evening, and the charges eventually were dropped.

Mr. Hu asserts four claims arising from this incident. In count 8, he alleges that Mayflower violated section 1981; he contends that Mayflower refused to allow him to complete the purchase of the merchandise due to his national origin and thereby interfered with his attempt to make a contract. In count 9, Mr. Hu asserts an equal protection claim under section 1983 based on these same allegations. Count 10 is a section 1983 claim for false arrest and false imprisonment. Finally, in count 11, Mr. Hu alleges a violation of 42 U.S.C. § 1985, consisting of conspiracy between the City and Mayflower to deprive him of his rights under section 1981.

## Discussion

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all

3

well-pleaded factual allegations in the complaint. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). To avoid dismissal, the allegations in the complaint need do no more than "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1965). *Pro se* complaints are liberally construed and are held to a less stringent standard than complaints drafted by lawyers. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007).

1. **Permit Revocation**

    a. **Section 1983 Claims**

    Mr. Hu contends that the City violated section 1983 by violating his constitutional rights to substantive and procedural due process (counts 1 and 4) and equal protection (count 3).

    The City argues that the due process claims are deficient because Mr. Hu lacked a constitutionally property interest in the building permit. The Court need not address that issue, however, because it is clear that, as the City argues, Mr. Hu cannot show that he was denied due process of law. As the City notes, an established procedure exists to challenge the City's issuance of a stop work order. *See, e.g.*, Chi. Mun. Code §§ 13-32-120 (submission of affidavit of compliance with permit) & 13-24-060 (appeal of decision). Mr. Hu has not allege that these remedies are procedurally inadequate. Under established law in this Circuit, the existence of these and other post-deprivation remedies satisfy whatever requirements the Due Process Clause may impose. *See, e.g., New Burnham Prairie Homes, Inc. v. Village of Burnham*, 910 F.2d 1474, 1480

(7th Cir. 1990). This disposes of both the procedural and substantive due process claims. *See id.* at 1481.

In his third claim, Mr. Hu alleges that the City violated the Equal Protection Clause of the Fourteenth Amendment by singling him out based upon his status as an Asian-American when it issued the stop work orders. The City contends that Mr. Hu's assertions are insufficient because they are conclusory. The Court disagrees. The Supreme Court has reaffirmed that notice pleading, not fact pleading, is the standard in federal court. *Erickson*, 127 S. Ct. at 2200. Mr. Hu has alleged that the City acted as it did because of his national origin. This is sufficient to put the City on notice of Mr. Hu's claim. *See Tamayo v. Blagojevich*, 526 F. 3d 1074, 1083 (7th Cir. 2008) (noting that *Twombly* does not bar conclusory statements from pleadings). Though Mr. Hu does not identify in his complaint the evidence that supports his contentions, federal pleading standards do not require him to do so. The Court declines to dismiss Count 3. If the City believes that Mr. Hu has no evidence to support his claim, it should file a motion for summary judgment at the appropriate time.

 b. **Section 1981 Claim**

In count 2, Mr. Hu alleges the City violated section 1981 by targeting minority homeowners when issuing stop work orders. To succeed on a section 1981 claim, a plaintiff must show that (1) he belongs to a racial minority group; (2) the defendant intended to discriminate based on the plaintiff's race; and (3) the discrimination concerned one or more of the activities enumerated in section 1981, including the right to make and enforce contracts. *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir.

5

1996).

Mr. Hu does not allege in count 2 any racial discrimination by the City in making or enforcing contracts.  Rather, he alleges that the City has a pattern and practice of targeting minorities in issuing stop work orders.  The City is entitled to dismissal of Count 2.

### c. Section 1982 Claim

In count 7, Mr. Hu alleges the City has violated 42 U.S.C. § 1982, which provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  Mr. Hu alleges, again, that the City issued its stop work order because he is Asian, preventing him from leasing his property.

The Court dismisses this as a separate claim; it essentially duplicates Count 3, which the Court has declined to dismiss.  The only thing that Count 7 adds to Count 3 is the allegation that in addition to violating Mr. Hu's constitutional right to equal protection, the City also violated his statutory rights under section 1982.  There is no reason for there to be two separate claims alleging what amounts to the same wrong.  Mr. Hu can assert both the constitutional and statutory violations under Count 3, his section 1983 claim.  This obviates the need to address the City's argument that Mr. Hu can sue for violation of section 1982 only by way of section 1983.

### d. Takings Claims

Mr. Hu alleges that the permit revocation amounted to a temporary regulatory taking of his property without just compensation in violation of the Fifth Amendment of

6

the U.S. Constitution and the parallel provision of the Illinois Constitution, Article I § 15. Though this sort of claim is difficult to prove, the City has not attacked its legal sufficiency. Rather, it argues that the claim should be dismissed because Mr. Hu refers in a particular paragraph of Count 6 to the Village of Maywood and Robinson Towing, not the City. That is an obvious typographical error; it is clear that Mr. Hu is alleging that it was the City of Chicago that violated his rights in connection with the stop work order. The City's only other argument – that this claim is insufficiently connected with the others to be part of the same case – is entirely lacking in merit. Because these are the City's only arguments, the Court declines to dismiss Count 5 or Count 6.

2. **Mayflower Arrest Incident**

   a. **Section 1981 Claim**

Count 8 of Mr. Hu's complaint is a section 1981 claim against Mayflower Food. Although the Court is, strictly speaking, dealing only with the City's motion to dismiss, this Court will address the sufficiency of Count 8 because Mr. Hu addressed it in his response to the City's motion.

Mr. Hu alleges that Mayflower's decision to call the police was motivated by racial animus and that Mayflower thereby deprived him of his right to make a contract in violation of section 1981. Section 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions. As discussed earlier, to succeed on a section 1981 claim, a plaintiff must prove that he belongs to a racial minority; the defendant intended to discriminate against the plaintiff based on his race; and the discrimination concerned one or more of the activities enumerated in section 1981,

7

including the right to make and enforce contracts. *Morris*, 89 F.3d at 413.

Mr. Hu has alleged that he is of Asian descent, and he adequately alleges that Mayflower intended to discriminate against him on the basis of race. He also alleges that he selected merchandise to purchase and was trying to pay for the purchase and thus was attempting to enter into a contractual relationship with Mayflower. The parties' dispute concerns whether Mr. Hu has adequately alleged interference with his right to contract in a way that runs afoul of section 1981.

The Fifth Circuit has explained that an "allegation[ ] of the mere possibility that a retail merchant would interfere with a customer's right to contract in the future" is insufficient to support recovery under § 1981. *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752 (5th Cir. 2001). An allegation that a customer engaged in an actual attempt to contract that the merchant in some way thwarted an actual attempt to contract for racially-based reasons is, however, sufficient. *Id.* at 752; *see also Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 874 (6th Cir. 2001) ("We have no trouble concluding that [plaintiff] made herself available to enter into a contractual relationship for services ordinarily provided by Wal-Mart: the record reflects that she had selected merchandise to purchase . . . and would, in fact, have completed her purchase had she not been asked to leave the store."); *Fakorzi v. Dillard's Stores, Inc.*, 252 F. Supp. 2d 819, 835 (S.D. Iowa 2003) ("Plaintiffs allege they would have purchased the dress from Dillard's had they not been detained by the police. Thus, the third element [discrimination concerning making of a contract] is met."); *Henderson v. Jewel Food Stores, Inc.*, No. 96 C 3666, 1996 WL 617165, at *3-4 (N.D. Ill. Oct. 23, 1996) (finding

plaintiff's allegations sufficient to sustain a section 1981 claim when the "plaintiff was midstream in the process of making a contract for goods purchase" at a cashier at the time an officer arrested him).

The primary Seventh Circuit case dealing with this issue is *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996). In *Morris*, the plaintiffs, two African-American men, were walking around defendant's store when management, upon suspicion that the men were shoplifting, called the police. *Id.* at 412. The police arrived, questioned the men, found no evidence of wrongdoing and left the store. *Id.* The plaintiffs then sued the store under section 1981, asserting that "by summoning the police to 'check out' African-American patrons like themselves, the store discouraged and dissuaded them from making the purchase." *Id.* at 414. The Seventh Circuit rejected the suit on the ground that the plaintiffs could not "point to specific facts showing that Office Max deprived them of any of the enumerated rights in § 1981 . . . specifically, the right to make and enforce a contract. They were denied neither admittance nor service, nor were they asked to leave the store." *Id.*

Mr. Hu's allegations, however, distinguish this case from *Morris*. Mr. Hu alleges that he would have completed a credit card purchase but for the fact that he is Asian-American. Specifically, he alleges that "[t]he purchase of the merchandise[ ] did not complete [sic] because of Mayflower. Had Hu been a white American, the store would never have treated him that way." Am. Compl. ¶ 44. The Court reads this as an allegation that the store would have accepted his credit card without requiring identification were it not for his minority status. That is sufficient to state a claim that he

was discriminated against in the making of a contract. (The Court notes, however, that this is a claim only against Mayflower, not the City.)

### b.   Equal Protection Claim

In count 9, Mr. Hu asserts a claim for violation of his equal protection rights arising from his allegedly unequal treatment at the Mayflower store. The Equal Protection Clause is a prohibition against governmental action, so to the extent Mr. Hu is attempting to assert this claim against Mayflower, he has failed to state a claim. Mr. Hu has also failed to state an equal protection claim against the City (if that is what he is trying to do, which is not at all clear). Though Mr. Hu has sufficiently alleged that he was singled out by Mayflower because of his ethnic background, he has not alleged that the arresting officers were aware of, let alone adopted, Mayflower's allegedly discriminatory intent. In any event, this claim is time-barred for the reasons stated in the following section of this decision.

### c.   False Arrest, False Imprisonment and Conspiracy Claims

Count 10 is a section 1983 claim for false arrest and false imprisonment, and count 11 is a claim under 42 U.S.C. § 1985 alleging a conspiracy to deprive Mr. Hu of his right to equal protection. The City argues that both of these counts are time-barred and should be dismissed. The Court agrees.

Neither section 1983 nor section 1985 contains a statute of limitations. When a plaintiff sues under a federal statute that lacks a limitations period, a federal court adopts the statute of limitations for personal injury suits in the forum state. *Wilson v. Garcia*, 471 U.S. 261, 266-267 (1985). The City argues Illinois' two-year statute of

limitations for personal injury claims applies to both of these claims. 735 ILCS 5/13-202. In response, Mr. Hu argues that the four year statute of limitations in 28 U.S.C. § 1658(a) applies.

Mr. Hu relies on the Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004). In *Jones*, the Court analyzed whether an amendment to an existing federal statute (42 U.S.C. § 1981) after the enactment of section 1658 created rights that were subject to that statute's four year limitations period. The Supreme Court answered this question in the affirmative, based on the fact that the plaintiff's claim was made possible only by virtue of the post-section 1658 amendment to section 1981. *Id.* at 383. As the City points out, however, Mr. Hu's claims in counts 10 and 11 are made under section 1983 and section 1985, which have not been amended since section 1658 was adopted. Accordingly, the Court follows established law and adopts Illinois' two-year limitation period for personal injury actions. 735 ILCS 5/13-202; *see Evans v. City of Chicago*, 434 F.3d 916, 934 (7th Cir. 2006).

A claim for false arrest accrues on the day of arrest, *see Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008), and a claim for false imprisonment "accrue[s] on the date the plaintiff is arraigned or released from custody before being charged." *Wallace v. Kato*, 127 S. Ct. 1091, 1096 (2007). Mr. Hu alleges that his arrest took place sometime in July-August 2004 and that he was released the same evening he was arrested. Thus the two-year limitation period expired, at the latest, sometime in August 2006. Mr. Hu did not assert his claims based on the Mayflower arrest until August 3, 2008, approximately two years too late. He has identified no basis for tolling the statute

of limitations.

In his section 1985 conspiracy claim, Mr. Hu asserts that Mayflower Food and the City of Chicago defendants conspired to violate his civil rights. The Seventh Circuit has applied the same two-year limitations period to section 1985 claims. *See Hoagland v. Town of Clear Lake*, 415 F.3d 693, 700 (7th Cir. 2005). Accordingly, Count 11 is also time-barred.

## Conclusion

For the reasons stated above, the Court grants the City of Chicago's motion to dismiss [docket no. 30] in part and denies it dismiss in part. Counts 1, 2, 4, 7, 9, 10, and 11 are dismissed for failure to state a claim. This leaves the following claims: Counts 3, 5, and 6, which Mr. Hu asserts against the City, and Count 8, which he asserts against Mayflower. The Court directs the defendants to answer those claims by March 26, 2009 and sets the case for a status hearing on April 2, 2009 at 9:30 a.m. for the purpose of setting a pretrial schedule. The Court orders Mr. Hu and counsel for the defendants to appear at that time.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 12, 2009